We have five cases on the calendar this morning. Three from the Patent Office, one from the MSPD, and one from the Court of Federal Claims, which will not be argued and has been submitted on the briefs. Our first argued case is REC Solar v. Hanwha Solutions, 2023-15-08 and 15-16. Mr. Bowne. Thank you, Your Honor. May it please the Court. The Board's final written decision contains two independent errors, an APA violation and an unsupported inherency finding. Each error separately warrants reversal, and I'd like to address each in turn, if I may. First, in finding a motivation to combine Huang and Wu, the Board reached beyond the arguments that were presented in the petition and crafted its own motivation to combine in violation of the APA. The motivation to combine in Hanwha's petition relied on a fundamental assumption that all three of the diodes in Huang's structure were housed in a single central junction box. Is your claim here this morning that we have an APA violation because you were not given the opportunity to address an argument, or are you saying that the Board's reasoning itself was incorrect? It's the former, Your Honor. The former. It's an APA violation because REC was not given an opportunity to address that argument. Now, as a result of that, and because the particular combination and motivation to combine that the Board adopted was never argued by Hanwha, then by nature of the fact that it was never argued, there was never any evidence presented to support that particular combination. So we would also say it's unsupported by substantial evidence. Counsel, I thought that you actually had the opportunity to respond at oral argument. Did you respond at oral argument? The first time that Hanwha ever raised the argument that it didn't matter whether or not the diodes were contained in a central junction box was at the oral argument, and that was an insufficient opportunity for us to formulate responses, and obviously we never had an opportunity to bring to bear expert testimony and other evidence on that particular argument. And we cited case law in our briefing. I believe the Dahl versus Aceleron case that basically says it's not enough to bring it up for the first time at oral argument. Now, the reason this distinction matters between where the diodes are housed is that if all of the diodes in Huang are already positioned in their ideal locations, as shown in Figure 2 of Huang, then there's no reason to go to Wu for an improvement. And the relevant teaching of Wu is to take diodes that are already housed in a central junction box and spread those out so that they'll be closer to their respective solar cell strings. Do you agree that using junction boxes to house bypass diodes was well known in the prior argument? Yes, Your Honor. And you also, I think, had some omissions to that effect or made those statements too? Yes, it was well known to put diodes in junction boxes. But the problem is it's a question of the motivation to combine. If Huang already has its diodes properly spaced, properly positioned, adjacent to each respective solar cell string, then there's no reason to go to Wu to implement junction boxes. What the board did is the board found that Huang does not clearly disclose diodes contained in a central junction box. And that should have been the end of the board's analysis because that was the fundamental assumption in Han Hua's petition. That assumption was stated multiple times in the petition. It was stated multiple times in the declaration supporting the petition. It was adopted, that assumption was adopted in the institution decision. And it was the central dispute between the parties all throughout the briefing leading up to the oral argument. But then in the final written decision, the board essentially changed its decision and it basically adopted a motivation to combine that was agnostic as to whether or not those diodes are contained in a central junction box. And that argument that the board adopted is basically a two-step argument. You start with Huang, which is agnostic according to the board as to where the diodes are located. You then go to the general knowledge in the art as a motivation to put the diodes in a central junction box. And then you use that modified Huang to go to Wu to essentially cure that defect. That's what the board said in its final decision, but that was not the argument that was presented in the petition. That's a different obviousness argument. And because of that, we submit that the board violated the APA. If I may, I'd like to get to the second argument. The second independent error requiring reversal is the board's finding that a single assembly cross connector joining parallel sets of solar cell strings as recited in Claims 5, 6, and 13 is the so-called natural result of combining Huang and Wu. Now, the board acknowledged that neither Huang nor Wu discloses this feature. And so the board's natural result finding appears to be based on inherency. And yet, Han Wang concedes in this appeal that it never presented an inherency argument to the board and never argued that a single assembly cross connector is necessarily present in the combination of Huang and Wu, which, of course, would be a requirement for an inherency finding. So to the extent that the board did make an inherency finding, and we submit that it did, there's no dispute between the parties here on appeal that that finding lacks substantial evidence. What Han Wang contends is that the board didn't really mean to invoke inherency, but instead meant to say that the single assembly cross connector is a predictable variation of Huang and Wu based on common sense. Now, first of all, that is not what the board said. The board used the words natural result, which traditionally invokes inherency under this court's inherency case law. The board on page 65 of the written decision says that because both cross connectors terminate to a single bypass diode, a procedure would naturally choose to fabricate them as a single assembly. Now, I don't see that as inherency. I think this is testimony, right? This is expert testimony? Yes, Your Honor. That's what they're referring to? Yes, Your Honor. So, the procedure would look at this bar coming like this, and then the other would come in, and then you have junction bars with the diodes there. The procedure would look at that and say, why not just connect it and make one single bar? Under KSR, why is that reasoning incorrect? Well, first of all, Your Honor, there is no dispute that neither of the references has that structure. Remember, Hwang has overlapping bus bars separated by the insulation layer. So, that's not a single assembly cross connector. Wu also has separate electrically isolated connectors separated by insulation. So, that's also not a single assembly connector. And there's no dispute from Hanra that when you combine those two, it's not a necessary result that you're going to get a single assembly cross connector. There's other ways to do it. But combining them into one single bar, that seems to be perhaps something that a placido would do just using its practical sense. Well, that was certainly Hanra's argument, but there's no evidence of that. They couldn't find that structure anywhere in the prior art. And so, this structure that they say is just a matter of common sense, they couldn't find it anywhere in the prior art. Remember, this court's case law, even if you were to assume that what the board meant was common sense and not inherency, that's Hanra's argument. This court's case law does not stretch so far as to support that finding. Does our case law oppose that finding? In this situation, yes, Your Honor. So, your argument is that there has to be some of the structure that caused the motivation to combine has to reside in the prior art? Yes, Your Honor. This court has urged caution in situations like this, where the structure is admittedly not present in the prior art. There's no dispute. It is not present in any of the references they submitted. In those types of situations... But did the poser here create structure? I think that's the question. Well, the structure, in order for that structure to exist, the patent explains that it's not a foregone conclusion that you're going to have a single-assembly cross-connector. What makes it possible is the fact that the circuits on either side of that cross-connector are essentially identical. They're mirror images of each other. And that's what allows you to use a single-assembly cross-connector. And doing so has advantages, and the patent explains what those advantages are. That single-assembly cross-connector, Wu could have done it, but didn't. Huang could have done it, but didn't. Zhang could have done it, but didn't. Why would a person with ordinary skill in the art not look at that and say, this technology is not complex, and I can join these two bars and create a single bar with greater efficiency? Well, Your Honor, that certainly was Huang's argument. But the problem is, under this court's case law, in order to manifest a missing limitation, there has to be evidence that it was known in the art. So they cited a series of cases which this court has said it is possible to use common sense to fill in a missing limitation under certain circumstances. But as we explained in our brief, in all of those cases, the limitation at issue actually was disclosed in the prior art, or it was admittedly well-known in the prior art. And the missing limitation was simply an instruction to repeat a known structure or to reverse the order of steps. That's not the situation here. Here, the structure is completely missing in the prior art, and Huang never argued that it was well-known. There was no argument that it was a well-known structure. Do you have case law that there's no motivation where the structure is completely missing from our case law? I would cite Arendi and Hearware, which I think are the leading cases. Again, we're not saying that it's impossible to use common sense to find a missing limitation. But those cases advocate for caution. And those cases put up guardrails in terms of what you have to do if you're going to try to rely on common sense. And one of those guardrails is, first of all, it can't be a limitation that's central. It only should be used for peripheral or non-important limitations, I think is what Hearware said. Here, that limitation is the only limitation in Claim 5. So, of course, it's central to that claim. It's the only thing in that claim. And there was no evidence presented that this limitation was well-known. They didn't make that argument. They did not rely on an inherent obviousness theory before the PTAC. Well, they did not. They clearly did not. Our position was that the board, essentially sua sponte, adopted an inherency-type argument in finding that it would be the natural result of combining these references. Now, in their briefing, they conceded that we never made an inherency argument. And that's fine. We agree with that. They never made an inherency argument. What they're saying is when the board used that terminology, natural result, it was really talking about common sense. And so, in our reply brief, we explained that even under a common-sense doctrine, this court's case law does not stretch far enough to support that type of finding. Counsel, you're into your rebuttal time. You can continue or say it. I'd like to preserve my time, Your Honor. Thank you. Mr. Sullivan. Thank you, Your Honor. May it please the court, Mark Sullivan for Hanwha. The board's decision to find the challenged claims of the 060 patent obvious in view of Wang and Wu was fully supported by the prior art, the entirety of Hanwha's briefing, including the petition, and the declaration of Hanwha's expert, Dr. Kimball. Unable to dispute that substantial evidence supports the board's factual findings and its multiple expert credibility determinations, REC advances a What's the substantial evidence as to this last issue we were discussing with your friend from the other side? Certainly, Your Honor. Dr. Kimball's declaration with respect to the combination of Wang and Wu describes how that combination would predictably result in a single assembly. In other words, both cross-connectors terminating at the same bypass diode and why the combination would predictably result in a single assembly and illustrates the combination in modified Figure 3. Dr. Kimball also explained in his declaration that combining two cross-connectors as one assembly was simpler. That's in Appendix 443, Paragraph 98. He also explained in his declaration why the single assembly would have been located along the centerline of the module and how the centerline placement provides a short, direct connection between the bypass diodes in close proximity. That term single assembly, interestingly, doesn't appear in the specification. There is one apparent reference to it at Column 4, Lines 47 through 51, which reads, in one embodiment, the cross-connectors 203 of some or all the solar cell units within the assembly are combined as one central cross-connector assembly and placed substantially in the centerline. In other words, the specification provides the same description as Dr. Kimball for how to fabricate the single assembly, namely that two separate cross-connectors can be combined as one assembly. This court has stated on multiple occasions that KSR's predictable variation motivation is particularly applicable in cases of simple mechanical technology. And this case also certainly presents such a circumstance. In order to have combination as you're describing, does the elements of the missing limitation have to reside or be disclosed in any of the prior art? No. This court has been very clear on that, and we would cite the court to its BEA Aerospace v. C&D Zodiac case. This court's decisions don't require the reference and obviousness combinations to explicitly disclose the disputed limitation, provided that there is evidence, which there is here, that the limitation would be a predictable or common sense result of the combination. And that was our theory, predictable result. I just want to clarify a question. I think you point to appendix page 443. Did you mean 4443? I just didn't see appendix page 443 in my appendix. I just wanted to make sure. I apologize. I believe 4443. I misstated. Your Honor, in the BEA Aerospace decision, the court rejected the argument that the references in the prior combination needed themselves to disclose this missing limitation, and there the missing limitation was a second recess to receive passenger seat supports. In the court that upheld, quote, the board's conclusion that the challenge claims would have been obvious because modifying the asserted prior art combination to include what was then the missing limitation was nothing more than a predictable application of known technology. And that was our theory. This is the only, this statement that we're looking at on page appendix 4443, this is the substantial evidence that you cite to support your argument? That was part of the substantial evidence in support of the combination of the two. This statement, because both cross-connectors, that's it? No. The evidence is in 441 through 443. That's Dr. Kimball's declaration, paragraphs 91 and 99, in which he explains, among other things, why when you have the two cross-connectors terminating at the same bypass diode, the predictable result is that you would have that as a single cross-assembly. That's the identical thing that the specification itself describes for how to fabricate a single assembly when you have two cross-connectors. It's one or it's two. When you have the two cross-connectors terminating at the same point, that's clearly, to use Dr. Kimball's words, simpler. It's simpler, it's predictable, that's exactly what the specification describes is how you would fabricate those two. With respect to the alleged APA issue, I point your honors in particular to the fact that the board's obviousness rationales are the same as those advanced in Hanwha's petition and in Hanwha's reply. More particularly, on pages 26 and 27, 29 and 32 of the board's decision, the board adopted the same rationales for motivation to combine that Hanwha articulated in its petition and in its reply. And as the board... I want to make sure the pages of the petition reply are applicable because the closing counsel of the committee was first raised at oral arguments. So I just want to make sure I can see those pages now. Of Hanwha's reply? The reply in the petition. You were pointing out that things were raised beforehand. Our closing counsel argued that it was just raised at the oral argument. I just want to be able to address that.  Hanwha affirmatively stated the rationales for its motivation to combine Wang and Wu in its petition, and that combination wasn't predicated on the presence of the bypass diodes within Wang's junction box. Hanwha devoted eight pages of its petition, its appendix 547 to 553 and 557 to 559, to describing why a skilled artisan would have been motivated to modify Wang's solar module to implement the multiple junction boxes of Wu, including how Wu, at paragraphs 22 and 25, expressly taught several benefits, to quote the board's decision, of housing bypass diodes in separate junction boxes rather than a single junction box, and how, again to quote the board's decision, having read Wu, a posita would have understood that using multiple junction boxes would also benefit the solar cell assembly of Wang. The first paragraph of the motivation to combine section of Hanwha's petition began by explaining why the two are analogous art. Same components, same purpose, and the board's decision expressly agreed with Hanwha's reasoning regarding Wang and Wu as analogous art with shared objectives. That's at page 27 of the board's decision. So that's one place that there's identity between the arguments and Hanwha's motivation to combine as expressed in the petition and what the board found. So clearly they had notice because it was the same. The petition goes on and explains how implementing Wu's separate junction boxes would have simplified Wang's solar cell assembly by eliminating the need for these complicated bus bars in the insulating layer. That rationale for the motivation to combine didn't depend on the location of the bypass diodes in Wang. And the petition and our expert's declaration went a step further and it showed a modified figure three of Wang to illustrate how incorporating Wu's multiple separate junction boxes with its diodes into Wang would work and would be advantageous, and the board expressly agreed with that as well on Appendix 27. That's another place that the motivation to combine was disclosed in the petition, repeated in the reply, argued at the hearing, and responded to by REC in its Patanona response, in its SIR reply, and again at the hearing. I'll give you a third place where there's a motivation to combine. The petition at 549 and 550, Appendix 549 and 550, and Dr. Kimball's declaration in paragraphs 78, 79, and 90 explained that there were multiple benefits associated with having separate junction boxes in Wang's design, in particular reducing resistive losses due to two things, shortening the bus bars within the assembly and also shortening the cables between adjacent solar modules. That was in the petition. It was again in Hanwha's reply. It was argued at the hearing. It was responded to vigorously by REC. In fact, if you look at REC's Patanona response, it had multiple arguments that didn't turn at all on the location of the diodes in Wang. It argued that a skilled artisan wouldn't be motivated to combine Wang and Wu and offered many reasons that the design philosophies in REC's words, the two references, that they were purportedly incompatible. For example, REC argued that, quote, a posita would have appreciated that Wang's single junction box offered several advantages compared to multiple junction boxes. That argument didn't turn at all on the location of diodes in Wang. REC argued that a posita would have kept Wang's single junction box. That argument didn't turn at all on the location of the diodes in Wang. And I can go on. The fact is, when the arguments were made at the oral argument, and we explained the oral argument, how the motivations to combine, as set forth, were taking Wu's multiple junction boxes with its diodes and incorporating it into Wang, as shown in modified figure 3, and it was agnostic as to the location of the diodes within Wang, there was no expression of surprise by REC. There was a vigorous counter-argument that reiterated everything that had been in their patent owner response and reiterated in their certify. What is your response to Fulton Counsel's argument that the board essentially was relying on appearances in terms of the multiple junction boxes? It's not. The argument that they're referring to about natural result is taking out of context that expression. Neither the board nor Hanwha ever mentioned inherent obviousness or inherency, and the board didn't apply that concept in finding the combination of Wang and Wu teaches a single assembly central cross-connector. In fact, if you look at that statement within the board's decision, there are nearly four pages of relevant analysis. This is at pages 34 through 37 of the board's decision that precede the reference to the board's statement that a single assembly is a natural result of combining the references teaching, and that analysis followed a traditional KSR obviousness analysis, which is the analysis that was set forth in Hanwha's petition. Right before the reference to natural results on page 37, the board said that it found persuasive Hanwha's expert testimony that based on the Wang and Wu combination, a poseta would naturally choose to fabricate the cross-connectors as a single assembly. The board also cited to KSR's guidance that a poseta is a person of ordinary creativity, not an automaton, to support the statement in question. And in that statement in question, the board was agreeing with Hanwha and its expert that a single assembly cross-connector is the predictable and obvious result of combining prior references under KSR's flexible framework. And if the panel has no further questions, we would ask for affirmation. And we will save your remainder for a conditional cross-appeal if there's something to respond to. Thank you, Your Honor. Mr. Bernanke. Thank you, Your Honor. Just a few points. Mr. Selvin pointed to portions of the petition in response to your question, Judge Cunningham, as to where they raised this argument that it could be agnostic as to where the diodes are placed. And he pointed first to Appendix 557. And I would like to actually go there because this really helps prove our point, Appendix 557, which is part of their petition. And here is the argument for the second junction box containing the second bypass diode. In the middle of the bottom paragraph, it says, As described, Huang teaches a solar cell assembly that uses a single junction box in the center of the panel to house all three bypass diodes. Wu also explains that housing bypass diodes in separate junction boxes rather than a single junction box has several benefits. So right there is the crux of their argument. They say Huang has three diodes in a central junction box, and Wu teaches a way to improve that by spreading those three diodes out in the separate junction boxes. At the oral argument, they changed course, and they said, actually, it doesn't matter. Now, Mr. Selwin claimed that we expressed no surprise when that happened. That's also incorrect, and I would like to refer you to the transcript, page 1397. The surprise that was expressed is contained beginning at line 6 on Appendix 1397, where we stated to the board after hearing this new argument of theirs that it doesn't matter, we said the second problem with this argument they're trying to make is that it's contrary to their ground. The ground in the petition is Huang plus Wu, and now suddenly they're trying to reach past Wu into the prior art and grab unnamed anonymous other references under the guise of, well, this was common and so forth. So we absolutely did express surprise when we heard that new argument that it doesn't matter. And lastly, with respect to the single assembly cross connector, I heard Mr. Selwin explain that their expert's testimony tracked what is stated in the patent in terms of why it would be a good idea to use a single assembly cross connector. And that really puts a finger on the problem here. What's happening here is the use of hindsight. That is the slippery slope when you start manifesting missing limitations simply through the say-so of an expert without ever showing that that limitation actually exists somewhere in the prior art and without any acknowledgement or agreement between the parties that it was a well-known feature in the prior art, which would be, for instance, the case in the Phillips decision or in the aerospace decision that he cited earlier. That recess was in the prior art, and the only thing that the claim required was you basically repeat it. You have two recesses. This is a different animal altogether. Here, that single assembly cross connector is nowhere in the prior art, and we don't believe this court's case law would support such a finding. Thank you, counsel. And since there's nothing more to add, I'll close the argument. The case is submitted. Thank you, Your Honor.